

**ORDERED in the Southern District of Florida on October 26, 2023.**



**Erik P. Kimball**
**Chief United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:                                                    Case No.: 20-17476-EPK
                                                          Chapter 7
ROYALTY INVESTMENTS
AND FINANCE, LLC,

     Debtor.
_____/

ROBERT C. FURR, Chapter 7
trustee of the estate of Royalty
Investments and Finance, LLC,

     Plaintiff,

v.                                                        Adv. Proc. No.: 22-01192-EPK

BRIAN A. GEORGE, individually, and
CARIBBEAN & LATIN AMERICAN
GROUP, LLC, d/b/a CALAS GROUP,

     Defendants.
_____/

## <u>MEMORANDUM OPINION</u>

The Court held trial in this adversary proceeding on July 20 and 21, 2023. The following constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52 made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. The Court considered all documentary and testimonial evidence admitted at trial, the parties' joint stipulation of facts for purposes of trial [ECF No. 45], and the parties' post-trial briefs [ECF Nos. 73, 74]. All references in this ruling to the complaint refer to the *Corrected Second Amended Complaint* [ECF No. 32].

The plaintiff in this adversary proceeding is Robert C. Furr in his capacity as chapter 7 trustee for Royalty Investments and Finance, LLC. The defendants are Brian A. George and Caribbean & Latin American Group, LLC d/b/a Calas Group.

The plaintiff brings five counts against Mr. George and Calas Group: count I to avoid the fraudulent transfer of property pursuant to 11 U.S.C. § 544 and Fla. Stat. § 726.105(1)(b); count II to avoid the fraudulent transfer of property pursuant to 11 U.S.C. § 544 and Fla. Stat. § 726.106(1); count III to avoid the fraudulent transfer of property pursuant to 11 U.S.C. § 548; count IV to recover all avoided transfers pursuant to 11 U.S.C. § 550; and count V for unjust enrichment. The transfers in question are multiple payments over a period of years by the debtor to Calas Group for the benefit of Mr. George. The plaintiff seeks money judgments recovering all payments made by the debtor to or for the benefit of the defendants.

The evidence presented in this case was slim. The Court wonders whether there was other evidence that could have been presented, and whether there were other arguments that could have been made. But the Court must rule based on the actual arguments presented and evidence admitted. As discussed more fully below, the plaintiff failed to meet his burden on any of the relief requested in the complaint. The Court will enter judgment in favor of the

defendants on all counts.

## FINDINGS OF FACT

Calas Group is a Florida limited liability company. Mr. George is the sole owner and corporate representative of Calas Group. Mr. George considers himself and Calas Group as essentially the same.

Royalty Investments and Finance, LLC, the debtor in this chapter 7 case, was a used car dealership that provided financing for its customers. It filed a voluntary petition under chapter 7 on July 9, 2020.

Mr. George came to know the debtor's principal through social interaction. Beginning in 2014, Mr. George personally invested in the debtor, eventually providing more than $120,000 to the debtor. Mr. George made those advances without reviewing any financial information regarding the debtor or conducting any due diligence.

Mr. George worked in the investment industry. He was employed by Merrill Lynch for about 11 years and was licensed and registered as an investment advisor with that firm. When Mr. George left Merrill Lynch, he "gave up the licenses" and acted as an agent for Bondwire, a registered investment advisory firm. Mr. George was not registered with the State of Florida as a securities dealer or intermediary during the times relevant to this action. However, Mr. George was an agent of a registered investment adviser during the applicable time.[1] Calas Group is an accounting firm, but Mr. George is not a certified public accountant.

The debtor and Mr. George entered into an oral agreement that Mr. George would

---

[1] In a deposition taken January 22, 2021, Mr. George testified that he acted as an investment adviser when he recommended investments in the debtor and was paid a referral fee for that service. While at one point in the deposition Mr. George testified that he was "just an inactive registered agent," suggesting that he was no longer formally associated with a registered investment adviser, from the context of his testimony he meant as of the date of the deposition, not at the time he referred investors to the debtor. George Dep. 38-42, ECF No. 63-19.

refer investors to the debtor and the debtor would pay Calas Group, for benefit of Mr. George, a fee if those referrals resulted in advances to the debtor.  In deposition, Mr. George testified that his fee was to be "5 percent of the investment."  In response to further questioning, Mr. George agreed that "for every investment in [the debtor] that came through the CALAS Group, the CALAS Group would receive 5 percent."  When asked "if we wanted to figure out the total amount of investments that the CALAS Group found for [the debtor], we would just have to extrapolate the bottom line number and that's 5 percent of whatever that total amount was?", Mr. George said "Yes, should be."  This is the extent of direct evidence on the terms of the agreement between the debtor and the defendants.

As a result of Mr. George's referrals, the debtor received millions of dollars of investments.  From the evidence admitted at trial, it is not possible for the Court to determine the exact dollar amount or the number of investments attributable to Mr. George's referrals.

Between August 2016 and March 2019, the debtor sent 34 checks to Calas Group totaling $639,022.43.  All of the funds were the debtor's funds that had been deposited in the debtor's bank account.  With the exception of one small check, the payments were in amounts between $16,000 and $22,000.  Mr. George did not invoice the debtor for these payments, nor did he request them in any way.  The Court can only conclude that the debtor calculated the amounts to be paid on its own and sent Calas Group a check each month.  The debtor made all the payments to Calas Group within 4 years prior to the filing of this bankruptcy case.  The last 10 of the 34 payments were made within 2 years prior to the filing of the bankruptcy petition.  All the payments were made to Calas Group for the benefit of Mr. George.

The plaintiff argues that the total of payments made to Calas Group, more than $639,000, is much more than 5% of the investments made in the debtor during the relevant

period.  The plaintiff states that the maximum amount of the debtor's notes outstanding at

any one time was $5,647,425, and that 5% of that sum would be $282,371.25, much less than

what was actually paid to Calas Group for the benefit of Mr. George.  The plaintiff further

argues that some of the investments in the debtor pre-dated the commencement of payments

to Calas Group.  The plaintiff argues that less than $2 million in investments were made in

the debtor during the period of payments to Calas Group, resulting in potential fees of less

than $100,000.  The plaintiff posits that the debtor may have been paying Calas Group what

was in effect a 5% annual fee on all its outstanding investments.[2]

There are multiple problems with the plaintiff's presentation on this point.

From the handful of the debtor's notes offered into evidence, it is clear that at least

some of the debtor's investors re-invested their advances when their notes came due.  As the

defendants argue, this accounts for the fact that the total fees paid to Calas Group is more

than 5% of the maximum amount of the debtor's notes outstanding at any one time.  If the

debtor's investors regularly re-invested their advances at maturity, the aggregate of

investments over time would be a multiple of the total notes outstanding on any particular

date.  Calas Group was entitled to 5% of investments resulting from Mr. George's referrals.

There is nothing in the evidence to suggest the fee would not apply to re-investments.

The plaintiff's argument that a substantial portion of investments in the debtor pre-

date the arrangement with Mr. George is also not supported by the evidence.  That the

debtor's books show notes outstanding prior to the first payments to Calas Group is not

conclusive on this point.  It is possible that notes issued prior to the first payment to Calas

---

[2] In the complaint, the plaintiff also alleged that the sum paid to Calas Group "far exceeds the market rate for a 'finder's fee' in connection with the issuance of similar securities."  The plaintiff did not offer any evidence of the market rate for such a fee and did not pursue this argument at trial.

Group represent investments attributable to Mr. George's referrals. Even if some of those older investments were not due to Mr. George's efforts, the evidence admitted in this case does not permit the Court to determine which investments did not result from Mr. George's referrals.

In his post-trial brief, the plaintiff asks the Court to extrapolate from the limited evidence admitted in this case. While on the surface the plaintiff's math implies some precision, the evidence in this case does not provide a firm foundation for the plaintiff's analysis. From the presentation at trial, it appears that the plaintiff could have provided a good deal of other evidence in support of its arguments. The plaintiff apparently had access to the entirety of the debtor's financial records, and likely had access to all the notes issued by the debtor over time. It seems the plaintiff could have offered testimony at trial from both Mr. George and the debtor's principal. The plaintiff might have offered more thorough testimony regarding the parties' oral agreement. The plaintiff might have offered detailed evidence indicating when the investors made advances to the debtor and in what amounts, and when advances were re-invested at maturity. From such evidence, the Court could have determined whether the sums paid to Calas Group were consistent with the parties' agreement. But the plaintiff offered only Mr. George's deposition testimony, which was vague and suffered from a lack of follow-up questions, a small sample of the debtor's notes, and expert testimony that, in the Court's view, amounted to a series of guesses about how the referral fees were calculated. The plaintiff has the burden of proof on the issue of whether Calas Group was paid more than the agreed fee. The plaintiff did not come close to meeting that burden.

The conduct of the parties is the most compelling evidence the Court has on the terms

of the agreement between the debtor and Mr. George. Without invoice or prompting from Mr. George, the debtor paid Calas Group, on a monthly basis, sums determined solely by the debtor. There is nothing in the evidence admitted in this case to cause the Court to doubt that the payments made by the debtor to Calas Group were consistent with the parties' agreement. In other words, as far as the Court can tell, Calas Group received exactly what it was entitled to receive.

The debtor was insolvent on each of the dates it made payment to Calas Group. The plaintiff offered expert testimony on this issue which the Court found thorough and compelling. Contrary to the defendants' argument, the expert properly excluded the value of an intercompany receivable because the payor was at all relevant times unable to pay the amount owed. The defendants argued that there was a related guaranty in favor of the debtor that the expert should have valued for purposes of his solvency analysis, but there was no evidence of such a guaranty offered at trial. The Court accepts the plaintiff's expert testimony on the issue of insolvency in its entirety.

In the complaint, the plaintiff also alleges that the debtor was left with unreasonably small capital as a result of payments to Calas Group, or the debtor intended to incur or believed or reasonably should have believed it would incur debts beyond its ability to pay. Whether the debtor was left with unreasonably small capital as a result of payment to Calas Group is a different standard than insolvency. As the Court indicated during closing argument, the plaintiff did not offer any evidence to meet that standard.[3] Nor did the plaintiff offer any evidence to support the allegation that the debtor knew or should have known it

---

[3] For a thorough discussion of the proof necessary to show "unreasonably small capital", see *Mukamal v. Nat'l Christian Charitable Found., Inc. (In re Palm Beach Finance Partners, L.P.)*, 598 B.R. 885 (Bankr. S.D. Fla. 2019), *aff'd*, 616 B.R. 189 (S.D. Fla. 2020).

had extended itself beyond the ability to pay debts as they came due.

There are multiple creditors of the debtor, with claims arising both before and after the payments made by the debtor to Calas Group, that would have the ability to pursue fraudulent transfer claims under Fla. Stat. § 726.105(1)(b) and/or Fla. Stat. § 726.106(1).  At the close of trial, the defendants did not dispute this fact.

CONCLUSIONS OF LAW

The plaintiff has the burden on all elements of the claims presented in the complaint, by a preponderance of the evidence.

Because the plaintiff did not offer evidence that the debtor was left with unreasonably small capital as a result of payments to Calas Group, or that the debtor believed or should have believed that it would incur debts beyond its ability to pay as they became due, the plaintiff is not entitled to relief under count I or under the component of count III that requests substantially similar relief.

In each of count II and the remaining portion of count III of the complaint, the plaintiff must prove (a) that the funds paid to Calas Group were the debtor's assets, (b) that the payments were made for the benefit of Mr. George, (c) that the payments were made within the relevant time periods prior to the filing of this bankruptcy case (4 years for count II and 2 years for count III), (d) that the debtor was insolvent at the time of the payments or was rendered insolvent thereby, and (e) that the defendants did not give reasonably equivalent value in exchange for the payments.  For count II, the plaintiff must prove that there is at least one creditor of the debtor who could pursue relief under Fla. Stat. § 726.106(1).

The Court found that all funds paid to Calas Group were the debtor's funds, that all payments were made for the benefit of Mr. George, that all 34 payments were made within 4

years prior to the petition date and that the last 10 of the 34 payments were made within 2 years of the petition date, and that the debtor was insolvent at all relevant times. For purposes of count II, the Court found that there are multiple creditors who could pursue relief under Fla. Stat. § 726.106(1). The only remaining issue for counts II and III is whether the defendants gave reasonably equivalent value in exchange for the payments.

The plaintiff raised three arguments on the issue of reasonably equivalent value. First, in the complaint, the plaintiff alleges that the sums paid to the defendants exceed the market rate for referral fees. The plaintiff did not pursue this argument at trial and it is waived. The plaintiff also alleges that the sums paid to the defendants exceed the fees payable under the oral agreement between Mr. George and the debtor. The plaintiff failed to meet his burden to show the Court that the sums paid to Calas Group, for benefit of Mr. George, were inconsistent with the fee agreement. Indeed, the Court found that the sums paid were exactly what was due. Finally, the plaintiff argues that because the notes issued by the debtor are securities under Florida law that should have been registered but were not, and Mr. George was not licensed as a dealer or intermediary under Florida law, the referral agreement between the debtor and Mr. George is an illegal agreement that cannot support a finding of reasonably equivalent value.

It is undisputed that the notes sold by the debtor are securities under Florida law. Fla. Stat. § 517.021(23)(a). The debtor's notes were subject to registration under Florida law and were not registered. *See* Fla. Stat. §§ 517.07, 517.051, 517.061. In his post-trial brief, the plaintiff devotes considerable space to argue that the debtor's notes should have been but were not registered with the State of Florida. For purposes of determining reasonably equivalent value in this case, this is a red herring. The notes are agreements between the

debtor and the debtor's investors. While the investors may have rights under the Florida statutes because the debtor's notes were not registered, those rights have nothing to do with whether Mr. George was properly registered with the State of Florida. If any agreement in this case is relevant to the argument that an illegal agreement cannot constitute reasonably equivalent value, it is the referral agreement between the debtor and Mr. George, not the notes between the debtor and its investors.

In support of his illegality argument, the plaintiff states that during the time Mr. George referred investors to the debtor he was not registered as a dealer or intermediary with the State of Florida. This is true. But Mr. George did not act as a dealer or intermediary. Under Florida law, a dealer is a person who "engages . . . as agent or principal in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person." Fla. Stat. § 517.021(8). An intermediary is a person who "facilitates through [their] website the offer or sale of securities of an issuer." Fla. Stat. § 517.021(13). "'Offer to sell,' 'offer for sale,' or 'offer' means an attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, or an investment of interest in an investment, for value." Fla. Stat. § 517.021(16). "'Sale' or 'sell' means," in part, "a contract of sale or disposition of an investment, security, or interest in a security, for value." Fla. Stat. § 517.021(22). Mr. George's sole activity in connection with the debtor's issuance of notes was to refer potential investors to the debtor. Those potential investors were Mr. George's friends and family. He did not advertise or actively seek investors from the general public. Mr. George did not act as "agent or principal" in connection with the debtor's issuance of notes. There is no evidence he had any involvement in structuring the debtor's notes or that he in any way assisted in the actual investment. He testified that he and the Calas Group had no

participation in preparing the actual promissory notes, that he and Calas Group did not handle funds or investments made in the debtor, and that a custodian handled such funds. Though he did receive transaction-based compensation for referring potential investors to the debtor, that alone is not dispositive of whether he acted as a dealer. The Court has no evidence to conclude that the referrals comprised so much of Mr. George's business to satisfy the definition of "dealer" under relevant law. *See Quantum Cap., LLC v. Banco de los Trabajadores*, No. 1:14-cv-23193-UU, 2016 WL 10536988, at *5-8 (S.D. Fla. Sept. 8, 2016). Nor did Mr. George facilitate the issuance of the debtor's notes using a website. Mr. George was neither a dealer nor an intermediary. Because the plaintiff's illegality argument is based solely on these aspects of the Florida statute, it must fail.

At most, Mr. George acted as an investment adviser in connection with the debtor's search for investors. Under Florida law, an investment adviser is a person "in the business of advising others as to the value of securities or as to the advisability of investments in, purchasing of, or selling of securities." Fla. Stat. § 517.021(14)(a). Based on the scant evidence offered on this issue, as an apparently authorized agent of a registered investment adviser it appears that Mr. George likely was a registered associated person under Fla. Stat. § 517.021(3)(b) during the time he referred investors to the debtor. The plaintiff's illegality argument does not point to this component of the Florida statutes. If it had, the plaintiff would have failed on this point as well.

Even if Mr. George had acted as an unregistered dealer or investment adviser when he referred investors to the debtor, making his agreement with the debtor arguably "illegal" under Florida law, this would not foreclose a finding of reasonably equivalent value in this case.

There are obvious circumstances where the absolute illegality of an agreement negates any right to enforce that agreement or to retain payment for its performance.  No one can reasonably argue that a hit man has a right to payment for murder or the right to keep a payment already received.  The agreement itself is so abhorrent that its performance can never amount to reasonably equivalent value.  Where the law completely prohibits an agreement such that there can never be an enforceable obligation, the agreement cannot supply reasonably equivalent value.  Examples of agreements absolutely prohibited under Florida law include agreements for prostitution and private gambling debts.  *Tabas v. Lehman (In re Capitol Invs., Inc.)*, 473 B.R. 838, 845-46 (Bankr. S.D. Fla. 2012) ("[T]here can never be measurable reasonably equivalent value for something that is absolutely illegal." (following *Armstrong v. Collins*, No. 01 Civ. 2437 (PAC), 2010 U.S. Dist. LEXIS 28075 (S.D.N.Y. Mar. 24, 2010))).

Unlike agreements for prostitution or private gambling debts, Florida law does not prohibit the facilitation of the sale of securities by a dealer or investment adviser.  If properly registered, they can assist in the sale of securities.  Even where a dealer or investment adviser is not registered as required, their agreement does not rise to the level of one so objectionable that it can never support a finding of reasonably equivalent value.  "The mere fact that a contract is void, unenforceable, or illegal does not require a finding that there was no reasonably equivalent value given for purposes of § 548(a)(1)(B)."  *Kaler v. Able Debt Settlement, Inc. (In re Kendall)*, 440 B.R. 526, 532 (B.A.P. 8th Cir. 2010)[4]; *accord Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 491 (D. Conn. 2002).

---

[4] Although the cited case arises in the context of fraudulent transfer claims under 11 U.S.C. § 548, the reasonably equivalent value standard is the same as that set out in the Uniform Fraudulent Transfer Act, incorporated in count II here.

The debtor obtained from the defendants exactly what it bargained for—millions of dollars in advances from persons referred by Mr. George—and then the debtor paid the defendants what it had agreed to pay for their services. Under the circumstances of this case, even if the defendants had acted as unregistered dealers or investment advisers in connection with the issuance of the debtor's notes, the Court would find they gave reasonably equivalent value in exchange for the payments received from the debtor.

The plaintiff failed to prove a lack of reasonably equivalent value, so the plaintiff is not entitled to relief under counts II or III (nor under count I if the plaintiff had proven the other elements of that claim). Because the plaintiff is not entitled to relief under any of counts I, II, or III, the plaintiff is not entitled to relief under 11 U.S.C. § 550 as requested in count IV.

This leaves only count V in which the plaintiff seeks recovery based on the theory of unjust enrichment. To prevail on a claim for unjust enrichment, a plaintiff must establish that (1) the plaintiff conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant voluntarily accepted and retained the benefit conferred; and (3) the circumstances make it inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022) (citations omitted). The first two elements are satisfied by the Court finding that the defendants received knowingly a benefit in the form of payments from the debtor, and they voluntarily accepted and retained those payments. The plaintiff must also show that it would be inequitable for the defendants to retain the sums paid to them.

The parties agree that the analysis of this remaining element is parallel to the analysis required to determine whether the defendants gave reasonably equivalent value in

exchange for the payments they received, a point on which the plaintiff failed.  In addition, even assuming Florida law prohibits an unregistered Mr. George from referring potential investors to the debtor, it was not inequitable for the defendants to retain the payments because Mr. George gave value in exchange for the fees paid.  *See Pincus*, 333 So. 3d at 1097-98.  The debtor asked Mr. George to assist it in finding investors.  Mr. George located investors who provided the debtor with millions of dollars of advances.  The debtor then paid Calas Group, for the benefit of Mr. George, exactly what the debtor had agreed to pay.  For the same reasons the Court determined that the defendants gave reasonably equivalent value for the payments, the Court rules that it is not inequitable for the defendants to retain the sums paid to them.  The plaintiff is not entitled to relief under count V.

## CONCLUSION

The plaintiff is not entitled to any relief requested in the complaint.  The Court will enter separate judgment in favor of the defendants.

###

Copies Furnished To:

Jason Rigoli, Esq.

*Jason Rigoli, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*